1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   FRIENDS OF PANAMINT VALLEY,          CASE NO. CV F 07-0487 LJO TAG
    LITTLE CHIEF MILLSITE PARTNERSHIP,
10   and BRYAN LOLLICH
                              Plaintiffs,    **ORDER ON FEDERAL DEFENDANTS'**
11                                           **MOTION TO DISMISS, CONSERVATION**
                                             **GROUPS' MOTION TO INTERVENE,**
12                                           **CONSERVATION GROUPS' MOTION TO**
                                             **DISMISS, AND STATE'S APPLICATION**
13         vs.                               **TO FILE AMICUS CURIAE BRIEF**
                                             (Docs. 25, 27, 29, 38)
14   DIRK KEMPTHORNE, UNITED STATES
    DEPARTMENT OF THE INTERIOR,
15   KATHLEEN CLARKE, Director, Bureau
    of Land Management, MIKE POOL,
16   Director, California State Bureau of Land
    Management, Ridgecrest Field Office,
17   HECTOR VILLALOBOS, Field Manager,
    Bureau of Land Management, Ridgecrest
18   Field Office, BUREAU OF LAND
    MANAGEMENT, FRAN P. MAINELLA,
19   Director, National Park Service, JAMES
    T. REYNOLDS, Superintendent, Death
20   Valley National Monument, NATIONAL
    PARK SERVICE,
21
                              Defendants,
22         and
23   NATIONAL PARKS CONSERVATION
    ASSOCIATION, CENTER FOR
24   BIOLOGICAL DIVERSITY, PUBLIC
    EMPLOYEES FOR ENVIRONMENTAL
25   RESPONSIBILITY, SIERRA CLUB,
    CALIFORNIA WILDERNESS
26   COALITION, and WILDERNESS
    SOCIETY,
27
                Defendant-Intervenor Applicants.
28   _____/

                                      1

1

## I. INTRODUCTION

Before the Court are three motions.  Defendants U.S. Department of Interior ("DOI"), Bureau of Land Management ("BLM"), National Park Service ("NPS") and several of their officials[1] (collectively, "Federal Defendants") seek to dismiss, on grounds of lack of jurisdiction, Plaintiffs'[2] claims to quiet title and to obtain access to the Surprise Canyon Road in Death Valley National Park. National Parks Conservation Association, Center for Biological Diversity, Public Employees for Environmental Responsibility, Sierra Club, California Wilderness Coalition, and The Wilderness Society (collectively referred to as "Conservation Groups" or "Proposed Intervenors") have moved to intervene in this action, both as-of-right and permissively.  The Proposed Intervenors also filed a motion to dismiss, for lack of jurisdiction and failure to state a claim.  For the reasons discussed below, this Court GRANTS the Federal Defendants' motion to dismiss for lack of jurisdiction.  Without jurisdiction, this Court can not properly address Proposed Intervenors' motion to intervene and motion to dismiss, both of which are TERMINATED.

## II. BACKGROUND

**A.    Factual[3]**

The route at issue, Surprise Canyon Road, was originally established in the 1870s to provide access to Panamint City.  Located in the Mojave Desert, Surprise Canyon Road commences at a point along the Indian Ranch Road in Inyo County, California, and runs in a northeasterly direction towards Panamint City.   The route is approximately six miles long.  The entire road traverses federal public lands except for those portions of the road which were not included in the Death Valley National Park.

Panamint City was the site of a short-lived silver boom.  At the time it was built, Surprise

---

[1] The individual defendants are DOI Secretary Kirk Kempthorne, BLM Acting Director James Hughes, California State BLM Director Mike Pool, BLM Ridgecrest Field Office Manager Hector Villalobos, NPS Director Fran P. Mainella, and Death Valley National Park Superintendent James T. Reynolds.  The individual defendants, DOI, BLM and NPS will be referred to collectively as the "federal defendants."

[2] Plaintiffs are: (1) Friends of the Panamint Valley, a group of owners of property near Panamint City, California, an abandoned mining town surrounded by Death Valley National Park; (2) Little Chief Millsite Partnership, a California general partnership which owns property near Panamint City; and (3) Bryan Lollich, an owner of property near Panamint City. These plaintiffs will be referred to collectively as "plaintiffs."

[3] Unless otherwise noted, the facts are drawn appropriately from Plaintiffs' complaint.

1  Canyon Road was in a condition sufficient to allow stagecoaches, horse-drawn buggies, and freight

2  wagons to travel to and from Panamint City.  The silver mines closed in 1877 and the town was

3  abandoned.  Thereafter, Panamint City became a minor tourist attraction as a "ghost town."

4      Surprise Canyon Road was reconstructed in 1918 and 1924, and was improved in 1947-48.

5  These reconstructions and improvements were necessary, as storms frequently washed out the road.  A

6  flash-flood washed out Surprise Canyon Road again in 1984.  After road was washed out, tourists

7  "continued to make their way up the road using four-wheel drive vehicles until its closure by the BLM

8  in May 2001." Complaint, ¶ 44.[4]

9      In 1994, the California Desert Protection Act of 1994, PL 103-433, October 31, 1994, 108 Stat.

10  4471 ("CDPA") created the Surprise Canyon Wilderness.  Pursuant to this legislation, the upper portion

11  of the canyon is within the Death Valley National Park, managed by NPS and the lower portion is on

12  adjacent BLM land.  Further, the CDPA identified Surprise Canyon Road as a "cherry stem" route

13  through the Surprise Canyon Wilderness to Panamint City.

14      On March 16, 2000, the Center for Biological Diversity, the Sierra Club and the Public

15  Employees for Environmental Responsibility (collectively, "the Center") sued the Bureau of Land

16  Management ("BLM") for violation of Section 7 of the Endangered Species Act.  In that lawsuit, the

17  Center alleged that BLM failed to enter into formal consultation with the Fish and Wildlife Services on

18  the effects of the California Desert Conservation Plan regarding threatened and endangered species in

19  an area which includes Surprise Canyon.  In settlement of that case, BLM entered into a court-approved

20  stipulation acknowledging that the activities authorized, permitted or allowed under the plan might

21  adversely affect threatened or endangered species. BLM also agreed by stipulation to prohibit motorized

22

23  [4]The Federal Defendants attach a copy of the BLM 2001 Report to their motion to dismiss and assert that the Court should consider the following facts, which lay outside of the complaint:  Between 1989 and 1990, a highly technical route up the canyon bottom was established by four-wheel drive operators.  BLM 2001 Report at 2. From that time, the route was only accessible to short wheel-based 4-wheel drive vehicle with winches.  *Id*. at 2, 10.  Using a high degree of skill and specialized apparatus, the vehicles are winched up and down the canyon waterfalls through the bedrock. *Id.* An estimated 100 motor vehicles per year climbed the Canyon and its waterfalls using specialized four-wheel drive vehicles from 1989 until Surprise Canyon Road was closed to motorized vehicles in 2001.  The route was promoted as "one of the most challenging jeep trails in the United States" by four-wheel drive organizations.  BLM 2001 Report at 10.  During that time period, BLM issued a special recreation permit to the California Association of 4-Wheel Drive Clubs Inc. to conduct jeep runs up the canyon as part of the annual "Panamint Valley Days."  BLM last issued the special use permit in 2000.  BLM 2001 Report at 10-11.  The Court need not consider this information, however, as the decision in this case is based upon facts which lie solely in the complaint.

3

1   access to Surprise Canyon pending completion of an environmental analysis pursuant to the National

2   Environmental Policy Act.  The settlement did not limit the public's use of the Canyon for recreational

3   hiking, travel by foot or pack animal.  Moreover, the stipulation provided an exception to the closure for

4   individuals who owned private property in the vicinity of Panamint City.

5          On May 23, 2001, the BLM published its "Environmental Assessment for the Proposed Interim

6   Closure of Surprise Canyon Route P 71 Panamint Range, Inyo, California to Motorized Vehicle Use,"

7   (May 23, 2001) ("BLM 2001 Report").  That interim report proposed closing Surprise Canyon Road to

8   all motorized vehicle use, but granted an exemption to this rule for law enforcement and other

9   emergency vehicles.  The proposed closure also provided an exemption for the owners of private

10  property located in the vicinity of Panamint city for purposes of accessing their property.  According to

11  the BLM 2001 Report, landowners in the area of Panamint City would be issued a key to the gate, with

12  stipulations deemed necessary to reduce the impact of motorized vehicle use on Surprise Canyon.  BLM

13  installed a gate prohibiting vehicle access to Surprise Canyon Road shortly after May 29, 2001.

14         After purchasing the mineral claims, Plaintiff Lollich sought to gain entry to Surprise Canyon

15  Road via motorized vehicle and applied for a permit with the BLM Regional Office.  In December 2003,

16  Plaintiff Lollich applied to the BLM and National Park Service (NPS) for the grant of a right-of-way.

17  Plaintiff has been unable to access his property by motorized vehicle since the BLM closed Surprise

18  Canyon Road in 2001.

19  **B.      Procedural**

20         On September 5, 2006, Plaintiffs filed a complaint in the District Court for the District of

21  Columbia seeking to enforce an alleged right-of-way through Surprise Canyon, declaratory judgment

22  and a writ of mandamus compelling the Federal Defendants to provide Plaintiffs with unfettered access

23  to Surprise Canyon Road.  On December 7, 2006, Federal Defendants filed a motion to transfer, or, in

24  the alternative, to dismiss, because venue was improper pursuant to 28 U.S.C. §§1402(d), 1406(a).

25  Plaintiffs did not oppose the motion with respect to their First, Second, and Third Claims for Relief.  On

26  February 5, 2007, this case was transferred to the Eastern District of California.

27         On May 18, 2007, Federal Defendants moved to dismiss Plaintiffs' complaint pursuant to Rule

28  12(b)(1) of the Federal Rules of Civil Procedure (Doc. 29), arguing that Plaintiffs' claims are barred by

1   the United States' sovereign immunity and therefore this Court lacks subject matter jurisdiction. On the

2   same day, Conservation Groups filed a renewed motion to intervene (Doc. 25), and also a motion to

3   dismiss (Doc. 27). The Conservation Groups' motion to intervene contends that they are entitled to

4   intervention as of right because, *inter alia*, they claim an interest relating to Surprise Canyon, based on

5   their goals of protecting the "natural, biological, and recreational resources of Surprise Canyon from,

6   among other things, the destructive impacts of motorized vehicle use." Conservation Groups Mot. to

7   Intervene, 2.

8        On June 28, 2007, Plaintiffs filed an opposition to the Federal Defendants' motion to dismiss for

9   lack of jurisdiction (Doc. 33), Conservation Groups' motion to intervene (Doc. 32), and motion to

10  dismiss (Doc. 34). On June 29, 2007, Federal Defendants filed an opposition to Conservation Groups'

11  motion to intervene (Doc. 36). On July 20, 2007, Federal Defendants and Proposed Intervenors filed

12  responses to Plaintiffs' opposition to the motions to dismiss (Doc. 37, 40) and the Proposed Intervenors

13  filed a reply to the Federal Defendants' and Plaintiff' opposition to the motion to intervene (Doc. 39).

14  Finally, also on July 20, 2007, the Attorney General of the State of California ("State") filed an

15  application for leave to file an amicus curiae brief, discussing California state law as it relates to this

16  action. (Doc.38). This Court considered the Federal Defendants' motion to dismiss, the Conversation

17  Groups' motions to intervene and dismiss, and the State's application for leave to file an amicus brief

18  on the record and VACATES the August 20, 2007 hearing, pursuant to Local Rule 78-230(h).

19

20                                 **III. DISCUSSION**

21  **A.    Standards of Review**

22        **1.    Motion to Dismiss–12(b)(1)**

23        Defendants move to dismiss this action based on Federal Rule of Civil Procedure 12(b)(1),

24  asserting that sovereign immunity bars this action. Plaintiffs assert that the statutory basis for their

25  claims against the United States is the Quiet Title Act, 28 U.S.C. §§1346(f) and 2409a. Plaintiffs also

26  seek declaratory judgment pursuant to 28 U.S.C. §2201 and a writ of mandamus pursuant to 28 U.S.C.

27  §1361. Federal Defendants argue that the complaint must be dismissed because the United States has

28  not waived its sovereign immunity with respect to any of the Plaintiffs' claims for relief.

1  "Sovereign immunity is an important limitation on the subject matter jurisdiction of federal

2  courts.  The United States, as sovereign, can only be sued to the extent it has waived its sovereign

3  immunity." *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) .  "The question

4  whether the United States has waived its sovereign immunity...is, in the first instance, a question of

5  subject matter jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

6  Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the

7  court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996); *Baker v.*

8  *United States*, 817 F.2d 560 (9th Cir. 1987).  "A federal court is presumed to lack jurisdiction in a

9  particular case unless the contrary affirmatively appears." *General Atomic Co. v. United Nuclear Corp.*,

10  655 F.2d 968, 968-69 (9th Cir. 1981).

11  In determining whether it has jurisdiction, a court is not restricted to the face of the pleadings,

12  but may instead review evidence and resolve factual disputes concerning the existence of jurisdiction

13  without converting the motion into one for summary judgment. *McCarthy*, 850 F.2d 558, 560; *Biotics*

14  *Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).  If the challenge to jurisdiction is facial,

15  all material allegations in the complaint are assumed true, and the court must determine from the face

16  of the pleading itself whether the plaintiff has established a proper basis for the court to assert subject

17  matter jurisdiction over the action. See *Thornhill Pub. Co. v. Gen. Tel. & Electronics Co.*, 594 F.2d 730,

18  733 (9th Cir. 1979).

19  **2.    Motion to Dismiss–12(b)(6)**

20  When a defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court

21  "must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded

22  factual allegations as true." *Siaperas v. Mont. State Comp. Ins. Fund*, 480 F.3d 1001, 1003 (9th Cir.

23  2007) (quotations omitted).  "Dismissal is proper only when there is no cognizable legal theory or an

24  absence of sufficient facts alleged to support a cognizable legal theory." *Id.*

25  **3.    Motion to Intervene**

26  Rule 24(a) of the Federal Rules of Civil Procedure provides that:

27  [u]pon timely application anyone shall be permitted to intervene in an action . . .
   when the applicant claims an interest relating to the property or transaction which is
28  the subject of the action and the applicant is so situated that the disposition of the

6

action may as a practical matter impair or impede the applicant's ability to protect
that interest, unless the applicant's interest is adequately represented by existing
parties.

Thus, a proposed intervenor must meet a four-part test:

(1) the motion must be timely; (2) the applicant must claim a "significantly protectable"
interest relating to the property or transaction which is the subject of the action; (3) the
applicant must be so situated that the disposition of the action may as a practical matter
impair or impede its ability to protect that interest; and (4) the applicant's interest must
be inadequately represented by the parties to the action.

*California ex rel Lockyer*, 450 F.3d 436, 440 (quoting *Sierra Club v. United States EPA*, 995 F.2d
1478, 1481 (9th Cir. 1993)).

In addition, and again upon timely application, an entity can be granted permissive intervention
"when an applicant's claim or defense and the main action have a question of law or fact in common,"
and intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.
Fed. R. Civ. P. 24(b)(2).

**B. Statutory Background**

**1. Revised Statute 2477**

Plaintiffs argue that Defendants do not have jurisdiction to close Surprise Canyon Road, because
it is a public highway under the principles of Revised Statute 2477 ("R.S. 2477").  R.S. 2477 once
provided that "the right of way for the construction of highways over public lands, not reserved for
public uses, is hereby granted." 43 U.S.C. § 932 (1970), *repealed by* Federal Land Policy Management
Act ("FLPMA"), Pub. L. No. 94-579, § 706(a), 90 Stat. 2743, 2793 (1976).  Originally section 8 of the
Mining Act of 1866, R.S. 2477 was passed by Congress as a means of providing public access across
unreserved public domain lands during an era aimed at facilitating the settlement of the American West.
See *Central P. R. Co. v. Alameda County*, 284 U.S. 463, 471-73 (1932).  The act repealing R.S. 2477
preserved any rights-of-way that had existed prior to the date of enactment.  43 U.S.C. § 1769(a).

**2.     The Quiet Title Act**

The Quiet Title Act provides that "[t]he United States may be named as a party defendant in a
civil action...to adjudicate a disputed title to real property in which the United States claims an interest."
28 U.S.C. §2409a(a).  Before the Quiet Title Act was passed in 1972, the United States had not waived

7

1   its immunity with respect to suits involving title to land. *Block v. North Dakota*, 461 U.S. 273, 280

2   (1983).  Congress considered and enacted the Quiet Title Act in order to provide recourse to its citizens

3   asserting title to lands also claimed by the United States. *Id*. at 202.  "The basic rule of federal sovereign

4   immunity is that the United States cannot be sued at all without the consent of Congress.  A necessary

5   corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign

6   immunity of the United States, those conditions must be strictly observed, and exceptions thereto are

7   not be lightly implied." *Id*. at 287.

8          The Quiet Title Act contains several express limitations on its waiver of sovereign immunity.

9   For example, an action to quiet title under this provision must be brought in the district court where the

10  property is located.  28 U.S.C. §1402(d).  The Act further imposes a statute of limitations and a just

11  compensation provision.  28 U.S.C. §§2409a(g) and (b).  Of particular concern to the case at bar, the

12  Quiet Title Act requires that any complaint alleging a quiet title claim must "set forth with particularity

13  the nature of the right, title, or interest which the plaintiff claims in real property." 28 U.S.C.§ 2409a(d).

14  **C.      Federal Defendants' Motion to Dismiss**

15         Plaintiffs assert that they have a right, as members of the public, to use and maintain Surprise

16  Canyon Road as a public right of way pursuant to R.S. 2477.  As members of the public, Plaintiffs seek

17  (1) to quiet title against the United States government, (2) declaratory judgment from this Court that

18  Surprise Canyon Road is a public highway under R.S. 2744, and (3) a writ of mandamus from this Court

19  directing the government to allow Plaintiffs unfettered use and enjoyment of the route.  Federal

20  Defendants argue that the complaint must be dismissed because Plaintiffs do not fit within the limited

21  waiver of sovereign immunity in any of their causes of action.  Thus, the first issue to be decided by this

22  Court is jurisdictional.

23         **1. Quiet Title Act**

24         The threshold issue of subject matter jurisdiction addresses whether Plaintiffs, as members of

25  the public, can properly assert their claim under the Quiet Title Act.  As previously set forth, the Quiet

26  Title Act requires that Plaintiffs plead "with particularity the nature of the right, title, or interest which

27  the plaintiff claims in real property."  28 U.S.C.§ 2409a(d).  Defendants argue that Plaintiffs have not

28  asserted an ownership interest in the underlying property to bring a quiet title action properly.

1    Defendants further argue that Plaintiffs have confused a member of the public's "right to use" the road

2    with a legal interest and claim in title to the property.  As members of the public, Federal Defendants

3    conclude, Plaintiffs do not have a right, title, or interest in the real property, and therefore do not have

4    the benefit of the government's waiver of sovereign immunity through the Quiet Title Act.   In

5    opposition, Plaintiffs argue (1) the Quiet Title Act should be liberally construed, (2) it is improper for

6    this Court to rely on cases outside of California, because R.S. 2477 cases are governed by state law, and

7    (3) California law supports their position that there is proper jurisdiction.

8           The federal government allows only limited and defined waivers of its sovereign immunity.

9    "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the

10   extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841, 106 S. Ct. 2224, 90 L.Ed.

11   2d 841 (1986) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L. Ed. 1058

12   (1941)).   A waiver of sovereign immunity by the United States must be expressed unequivocally.

13   *Consejo De Desarrollo Economico De Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir.

14   2007) (citing *United States v. Nordic Village, Inc*., 503 U.S. 30, 33, 112 S. Ct. 1011, 117 L.Ed. 2s 181

15   (1992).  "As a general matter, purported statutory waivers of sovereign immunity are <u>not</u> to be liberally

16   construed."  482 F.3d 1157, 1173 (citation omitted) (emphasis added).

17          The purpose of the Quiet Title Act is "to determine which named party has superior claim to a

18   certain piece of property." *Cadorette v. United States*, 988 F.2d 215, 223 (1st Cir. 1993).  Congress thus

19   permitted challenges to the United States' claim of title to real property only to parties who themselves

20   claim an interest in title.  See *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910, 915

21   (recognizing that a federal quiet title action must fail if the plaintiff "does not claim a property interest

22   to which title may be quieted.").  The requirement that this condition be met is neither discretionary nor

23   flexible because the terms of the waiver of sovereign immunity limit the scope of this Court's

24   jurisdiction. *Mottaz*, 476 U.S. at 841; *Block*, 461 U.S. at 287.

25          Plaintiffs argue that the Quiet Title Act should be construed liberally to include their claim.  In

26   support of this position, Plaintiffs rely on *United States v. Bedford Assocs.*, 657 F.2d 1300 (2d Cir. 1981)

27   and *Prater v. United States*, 612 F.2d 157 (5th Cir. 1980); however, both cases are distinguishable from

28   the case at bar.  In *Bedford Associates*, the court determined the rights and liabilities in an office building

9

1    where the plaintiffs owned the property, a third party bank held a mortgage in the property and the

2    federal government leased the property.  657 F.2d 1300, 1301.  The Court concluded that Quiet Title Act

3    permits a mortgage foreclosure action to proceed against a leasehold interest of the United States by a

4    private owner.  *Id.* at 1310.  The Court did not decide whether the Quiet Title Act extends the right of

5    a person, as a member of the public, to pursue an action against the federal government over land

6    pursuant to R.S. 2477, and its ruling does not suggest such a conclusion.

7        *Prater* is similarly distinguishable.  In that case, Prater conveyed land to the federal government

8    and later sought to enforce an oral promise of repurchase rights to the land originally owned by her.  612

9    F.2d 157, 158.  The court concluded that plaintiff's alleged interest in equitable title was sufficient to

10   maintain an action pursuant to the Quiet Title Act.  The court, however, did not hold or imply that a

11   mere interest in use could form the basis for such an action.  Moreover, in discussing the history of the

12   Quiet Title Act, the *Prater* court noted: "Under old English practice, the plaintiff in such suits was

13   required to be in <u>possession,</u> and the usual grounds of equitable jurisdiction (an imminent threat and an

14   inadequate remedy at law) had to be present.  This, of course, is merely included to show the history of

15   this type of action."  *Prater*, 612 F.2d 157,159 (emphasis added) (quoting H.R. Rep. No. 92-1559,

16   *Reprinted in* (1972) U.S. Code Cong. & Admin. News, pp. 4547, 4551).  Here, Plaintiffs can not assert

17   that they are in possession of the land, nor do  they claim the "usual" grounds of equitable jurisdiction.

18   Accordingly, even if the Court were to conclude a liberal construction of the Quiet Title Act were

19   proper, Plaintiffs would still be unable properly to assert a claim.[5]

20       Plaintiffs do not claim title themselves to Surprise Canyon Road.  Instead, they claim to have a

21   right "as members of the public, to use and maintain" the alleged right of way.  Complaint, ¶20.  The

22   only argument advanced by Plaintiffs in opposition to this motion is based on their purported rights of

23   use as "members of the public."  Conversely, in each of the cases relied upon by Plaintiff, the plaintiff

24   has some arguable ownership interest in property.  Thus, Plaintiffs' reliance on cases in which parties

25   have a proprietary or possessory interest in the title of property is misplaced.

26       Courts which have addressed whether a plaintiff, as a member of the public, can assert a title

27

28       [5] Furthermore, upon rehearing, the Fifth Circuit made clear that it had not intented to expand the scope of the Quiet Title Act's limited waiver of sovereign immunity.  *See Prater v. United States*, 618 F.2d 263 (5ᵗʰ Cir. 1980).

1   under the Quiet Title Act for access to routes established pursuant to R.S. 2477 have ruled that there is

2   no subject matter jurisdiction.  The Tenth Circuit Court of Appeals has long held that members of the

3   public are without jurisdiction in actions brought under the Quiet Title Act for access to public roads

4   claimed under R.S. 2477.  In 1978, the Court reasoned that "[m]embers of the public as such do not have

5   "title" in public roads.  To hold otherwise would signify some degree of ownership as an easement.  It

6   is apparent that a member of the public cannot assert such an ownership in a public road."  *Kinscherff*

7   *v. United States*, 586 F.2d 159, 160 (10th Cir. 1978).   This position was reaffirmed in *Sw. Four Wheel*

8   *Drive Ass'n v. BLM*, 363 F.3d 1069 (10th Cir. 2004), wherein the Court ruled that Southwest Four Wheel

9   Drive Association, as members of the public, did not meet the requirements under the Quiet Title Act

10  to assert a claim seeking judgment granting the public title to certain roads of federal land that the BLM

11  closed after designating it wilderness.  *Id.*  This rule has been adopted in the Second Circuit Court of

12  Appeals, which held, "We agree with the Tenth Circuit that the right of an individual to use a public road

13  is not a right or interest in property for purposes of the Quiet Title Act."  *Long v. Area Manager, Bureau*

14  *of Reclamation,* 236 F.3d 910, 915 (8th Cir. 2001) (citing *Kinscherff v. United States*, 586 F.2d 159, 160

15  (10th Cir. 1978).[6]  This Court finds these cases instructive, well-reasoned and persuasive.

16              **2.      Federal or State Law**

17          Plaintiffs argue that this Court should not apply *Kinscherff, supra,* because it was based "entirely

18  on New Mexico state law, which differs substantially from the state law of California."  Pl. Opp. Fed.

19  Def. Mot. Dismiss, p. 7.  In *Kinscherff*, the Court noted, "It thus must be assumed that Congress intended

20  to permit to be brought against the United States the typical quiet title suit, as it has developed in the

21  various states in this country through statutory and case law." 586 F.2d 159, 160.  The Court then

22  considered whether under New Mexico law, plaintiffs could bring a quiet action title as members of the

23  public and concluded that they may not. *Id.*

24          Whether federal or state law is applicable is a question more suitable to substantive questions

25  of law relating to R.S. 2477.  In its most recent case, and after a lengthy discussion on the matter, the

26  Tenth Circuit clarified that

27  _____

28      [6]In *Long v. Area Manager, Bureau of Reclamation,* 236 F.3d 910  (8th Cir. 2001), plaintiffs were similarly situated
    to the Plaintiffs here, in that they owned rights to land which abutted the federal property.

1
2
3
4

> *federal law governs the interpretation of R.S. 2477*, but that in determining what is required for acceptance of a right of way under the statute, federal law "borrows" from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating congressional intent. The applicable state law in this case is that of the State of Utah, supplemented where appropriate by precedent from other states with similar principles of law.

5
6

*S. Utah Wilderness Alliance v. BLM*, 425 F.3d 735, 768 (10th Cir. 2005) (emphasis added). Generally, the question of applicable law arises when a court is called upon to determine how a valid R.S. 2477

7
8

right-of-way is acquired. *Id.* at 758-68; see also *Western Aggregates, Inc. v. County of Yuba*, 101 Cal. App. 4th 278, 292 (Cal. App. 3d Dist. 2002) (noting R.S. 2477 is a "federal law [which] incorporated

9

state law principles, both generally regarding local laws and mining customs, and in particular regarding

10

roads").

11
12

None of the cases cited by Plaintiffs stands for the asserted proposition that California case law would allow a quiet title action by a member of the public. Instead, those cases interpret the validity of

13
14

a public right of way under R.S. 2477 pursuant to California law. See *Western Aggregates, Inc. v. County of Yuba*, 101 Cal. App. 4th 278 (2002) (concluding that members of the public were improperly

15
16

arrested for trespass because the route was a public road based on historic state interpretation of dedication); *People v. Miller*, 231 Cal. App. 2d 130, 132 (Cal. App. 4th Dist. 1964) (holding that "There

17
18

is no evidence here that the public . . . ever acquired any proprietary interest in the site of the old roadway. *Thus the public had nothing more than a right of passage over the land*.") (citations omitted)

19
20

(emphasis added); *Ball v. Stephens*, 68 Cal. App. 2d 843, 845 (Cal. App. 1945) (plaintiff relied upon R.S. 2477 to prove the existence of the road, existence of road determined by California state law).[7]  In

21
22

this motion, the Court is not yet concerned with the substantive issues of R.S. 2477.  Rather, this Court must determine initially whether there is subject matter jurisdiction before it can proceed to these further

23

questions.

24

_____

25
26
27
28

[7]California state law cited by Plaintiffs is nearly identical to that of New Mexico law, as discussed in *Kinscherff*. In that case, a New Mexico statute cited by the Plaintiffs as purported authority to sue as members of public in a quiet title action "does no more than define public highways, determine maintenance responsibility, and provide an administrative process for abandoning public roads. Indeed, section 55-1-5 provides that rights of way vest in the State of New Mexico after a state highway has been open to the public for one year." 586 F.2d 159, 161.  As in *Kinscherff*, Plaintiffs here have misconstrued the law.  Thus, the "interest" plaintiffs seek to assert as part of the public is not of such a nature to enable them to bring a suit to quiet title." *Id.*

1    The scope of Quiet Title Act is a federal question and the answer must be sought in federal law.[8]

2    As a federal statute, the Quiet Title Act

3        must be interpreted in accordance with the principals of federal law, and while federal
         courts may properly look to state law as an aid in determining the application of statutory
4        language to specific facts, *such state law should be compatible with the purpose of the
         legislation* so as to find the rule that will best effectuate the federal policy.
5

6    *Vincent Murphy Chevrolet Co., Inc. v. United States*, 766 F.2d 449, 451 (10th Cir. 1985) (internal

7    citations and quotations omitted) (emphasis added).  Even if California state law would allow a member

8    of the public to bring a quiet title action, this Court could not rely upon such law where it would conflict

9    with federal law.  *Gonzalez v. Raich*, 545 U.S. 1, 29 (2005) (under Supremacy Clause, federal law

10   prevails where state and federal law conflict).   In this case, however, Plaintiffs have failed to

11   demonstrate that such a right exists under California state law.[9]

12       **3.       No subject matter jurisdiction**

13   "The question whether the United States has waived its sovereign immunity ...is, in the first

14   instance, a question of subject matter jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th

15   Cir. 1988).  Plaintiffs suing the United States bear the burden of demonstrating the United States has

16   waived its sovereign immunity with respect to the claims raised.  *Cato v. United States*, 70 F.3d 1103,

17   1107 (9th Cir. 1995); *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987) ("A party bringing a cause

18   of action against the federal government bears the burden of showing an unequivocal waiver of

19   immunity.")  Here, Plaintiffs have not met this burden.

20       Plaintiffs' interest asserted under the Quiet Title Act "must be some interest in the <u>title</u> to the

21   property." *Kansas v. United States*, 249 F.3d 1213, 1224 (10th Cir. 2001) (quoting *Kinscherff*).  "A quiet

22   title action may be brought by anyone claiming an interest in the real property.  The interest, however,

---

23       [8]On state quiet title law, then Attorney General wrote:  "One approach to a statute waiving immunity in this area
24   would be to adopt state law in its entirety...[h]owever, the wide differences in State statutory and decisional law on this subject
     make this an impractical alternative...It is our belief that uniformity at least as to the plaintiff's qualifications for instituting
25   suit is desirable and the draft bill sets forth such qualifications."  Letter from Attorney General to Speaker of the House,
     accompanying H.R. Rep. No. 92-1559 (1972) (Quiet Title Act), *reprinted in* 1972 U.S.C.C.A.N. 4547, 4555.
26

27       [9]Federal Defendants argue in the alternative that under state law, only public entities (such as county and state
     governments) hold title to public roads and not members of the public.  It is on this issue that the State seeks to file an amicus
28   brief.  However, because Plaintiffs failed to bear their burden of proving subject matter jurisdiction, the Court does not reach
     this issue.

1    must be some interest in the title to the property.  An attempt to remove a cloud from title presupposes

2    that the plaintiff has some title to defend." *Kinscherff*, 586 F.2d at 160 (internal citations omitted)..

3    Plaintiffs do not assert that they have an interest in the title to Surprise Canyon Road.  Rather, they argue

4    that as members of the public, they have a right to use the route.

5         Plaintiffs have not demonstrated that under federal or California state law, they have a right,

6    interest, or title to assert a claim against Federal Defendants under the Quiet Title Act properly .

7    Plaintiffs' reliance on California law to discuss whether Surprise Canyon Road is a public highway

8    pursuant to R.S. 2477 does not demonstrate that they may bring a quiet title action.  Accordingly, this

9    Court finds that Plaintiffs' claim that they have a right "as members of the public, to use and maintain"

10   Surprise Canyon Road are not cognizable under the Quiet Title Act and Federal Defendants' motion to

11   dismiss the first claim for lack of jurisdiction is GRANTED.

12   **D.    Other Causes of Action**

13        Plaintiffs Second Cause of Action asserts a claim under the Declaratory Judgment Act ("DJA")[10]

14   and the Third Cause of Action asserts a claim under the Mandamus Act.[11]  Federal Defendants argue that

15   the Ninth Circuit has long held that neither the DJA nor the Mandamus Act effects a waiver of the

16   United States' sovereign immunity. Additionally, Federal Defendants argue that this Circuit has

17   recognized, "when the United States has an interest in the disputed property the waiver of sovereign

18   immunity must be found, if at all, within the QTA." *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir.

19   1994); see also *Block*, 461 U.S. 273, 286 (holding that the Quiet Title Act is "the exclusive means by

20   which adverse claimants [can] challenge the United States' title in real property").  Plaintiffs do not

21   address the arguments raised against their second and third causes of action in their opposition.

22        All entities are "barred by federal sovereign immunity from suing the United States in the

23

24   [10]  The Declaratory Judgment Act, 28 U.S.C.§ 2201,  states in relevant part,:
      In a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of
      an appropriate pleading, may declare the rights and other legal relations of any interested party seeking
25   such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the
      force and effect of a final judgment or decree and shall be reviewable as such.

26

27   [11]  The Mandamus Act states: "The district courts shall have original jurisdiction of any action in the nature of
      mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty to the plaintiff."
28   28 U.S.C. §1361.

1   absence of an express waiver of this immunity by Congress." *Block*, 461 U.S. at 280. *See also San*

2   *Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1096 (9th Cir. 2005) ("Absent a clear waiver,

3   sovereign immunity precludes suit against the United States."). As the Supreme Court explained in

4   *Block*, "Congress intended the QTA to provide the <u>exclusive means</u> by which adverse claimants could

5   challenge the United States' title to real property." 461 U.S. at 286 (emphasis added); *see also Alaska*

6   *v. Babbitt*, 75 F.3d 449, 453 (9th Cir. 1996).

7        Plaintiffs' second claim seeks to "<u>quiet title</u> through declaratory relief by requiring that [Federal]

8   Defendants provide the Plaintiffs with a recognized right-of-way, as required by [R.S.] 2477."

9   Complaint, ¶ 107 (emphasis added). A claim that seeks a title determination against the United States

10   can only be brought under the Quiet Title Act, not the Declaratory Judgment Act or any other law. *See*

11   *Block*, 461 U.S. at 284-85 (party may not use "artful pleading" to escape Quiet Title Act's limits on suits

12   against the United States); *Alaska v. Babbitt*, 75 F.3d 449, 452-53 (9th Cir. 1995) (rejecting attempt to

13   use the APA's waiver of sovereign immunity to challenge the United States' title to real property);

14   *Shawnee Trial Conservancy v. U.S.D.A*, 222 F.3d 383, 388 (7th Cir. 2000), *cert. denied*, 531 U.S. 1074

15   (2001) ("to allow claimants to avoid the QTA by characterizing their complaint as a challenge to the

16   federal government's regulatory authority would be to allow parties to seek a legal determination of

17   disputed title without being subject to the limitations placed on such challenges" by the Quiet Title

18   Act").[12] Because Plaintiffs' second claims seeks a title determination, the cause of action based on the

19   Declaratory Relief Act is improper. Plaintiffs, having remained silent, have not met their burden of

20   proving that subject matter jurisdiction exists for this cause of action. Accordingly, Federal Defendants'

21   motion to dismiss the second cause of action is GRANTED.

22        Plaintiffs third cause of action seeks a writ of mandamus compelling the Federal Defendants to

23   provide Plaintiffs with "a right-of-way easement across Federal public lands pursuant to R.S. 2477," and

24   to compel BLM and NPS "to provide Plaintiffs access" to the alleged right-of-way. Complaint, ¶¶ 112,

25   113, 116. Plaintiffs' mandamus claim seeks title to an alleged highway right-of-way in which the United

26

27       [12] *See also, California v. Quechan Tribe of Indians*, 595 F.2d1153, 1155 (9th Cir. 1979) (Declaratory Judgment Act); *White v. Admn'r of Gen. Serv. Admin. of United States*, 343 F.2d 444, 447 (9th Cir. 1965) (Mandamus Act); and *Hou*

28   *Hawaiians v. Cayetano*, 183 F.3d 945, 947 (9th Cir. 1999) (same).

1   States has a claimed interest.  As such, it can only be brought pursuant to the Quiet Title Act's narrow

2   waiver of sovereign immunity.  *See Block,* 461 U.S. at 286; *Independence Mining Co. v. Babbitt*, 105

3   F.3d 502, 507 (9th Cir. 1997).  Therefore, Federal Defendants' motion to dismiss Plaintiffs' third cause

4   of action is GRANTED.

5   **E.      Motion to Intervene and Proposed Intervenor's Motion to Dismiss**

6          Because this Court finds that it lacks subject matter jurisdiction over all claims in Plaintiffs'

7   complaint, there is no authority to decide the other pending motions.   Accordingly,  Proposed

8   Intervenors' motion to intervene and motion to dismiss are TERMINATED.

9                                          **IV.  Conclusion**

10   For the foregoing reasons, this Court ORDERS:

11          I.          Federal Defendants' motion to dismiss for lack of jurisdiction is GRANTED (Doc. 29);

12          II.         Proposed Intervenors' motion to intervene (Doc. 25) and motion to dismiss (Doc. 27) are

13                      TERMINATED;

14          III.        State's application to file an amicus curiae brief is TERMINATED (Doc. 38);

15          IV.        The hearing currently set for August 20, 2007 is VACATED; and

16          V.          The clerk is directed to CLOSE this case.

17   IT IS SO ORDERED.

18   **Dated:     July 24, 2007**                        /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE

16